IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,724

STATE OF KANSAS,
*Appellee,*

v.

BRANDON KEITH JORDAN,
*Appellant.*

SYLLABUS BY THE COURT

1.

The term "alternative-means crime" refers to a crime which can be committed in more than one way. The Legislature creates an alternative-means crime by enacting criminal statutes which list distinct alternatives for an element of the crime. And the district court presents the jury with an alternative-means crime by giving jury instructions that incorporate more than one of the distinct statutory alternatives for an element of the crime. Presenting the jury with an alternative-means crime can raise questions about whether the jury unanimously agreed on the means supporting its guilty verdict. And Kansas criminal defendants have a statutory right to a unanimous verdict.

2.

In contrast, when criminal statutes and jury instructions incorporating them merely describe a material element or the factual circumstances in which a material element may be proven, the Legislature has created options within a means, not alternative means. Options within a means describe secondary matters that do not state additional and distinct ways of committing the crime. Thus, such options do not trigger statutory jury unanimity protections.

1

3.

When reviewing an alternative-means issue, the appellate court first considers whether the district court presented an alternative-means crime to the jury. To determine that, the reviewing court looks to the relevant statute's language and structure to decide whether the Legislature meant to list distinct alternatives for an element of the crime. If alternative means were not presented, the error inquiry ends.

4.

K.S.A. 2019 Supp. 8-1568(b)(2) does not set forth alternative means of committing fleeing and eluding by attempting to elude capture for any felony. The statute's plain language shows the distinct material element of fleeing and eluding under subsection (b)(2) is evading capture for any felony and the specific underlying felony is merely a description of a material element or factual circumstance which may prove the crime.

5.

In criminal cases, the Kansas Constitution confers subject matter jurisdiction on district courts. But jurisdiction is acquired in a criminal case upon the filing or amendment of a complaint, indictment, or information. Put another way, while the Kansas Constitution bestows subject matter jurisdiction on the district courts, the State must still properly invoke that jurisdiction through a charging document. To properly invoke jurisdiction, the charging document must satisfy three requirements. It must (1) show the case has been filed in the correct court; (2) show the court has territorial jurisdiction over the crime; and (3) allege facts that, if proved beyond reasonable doubt, would constitute a crime under Kansas law.

**6.**

Even when an evidentiary challenge is raised and ruled on before trial, a party must also make a timely and specific objection at trial to preserve the challenge for appellate review under K.S.A. 60-404.

**7.**

Prosecutors have broad latitude in crafting their closing arguments and drawing reasonable inferences from the evidence. Stating an opinion about a witness' credibility falls outside the bounds of proper argument, but discussing the legitimate factors a jury may consider in assessing credibility does not. One legitimate factor for the jury to consider in assessing witness credibility is whether a witness has motive to be dishonest.

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Oral argument held May 18, 2023. Opinion filed October 20, 2023. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi Litfin*, deputy district attorney, argued the cause, and *Kris W. Kobach*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

WALL, J.: After a law enforcement officer responded to a bank where Brandon Keith Jordan was trying to pass a fraudulent check, Jordan led the officer on a high-speed chase that ended in a fatal car crash. Jordan was convicted of several crimes, including felony murder based on the underlying inherently dangerous felony of fleeing or attempting to elude a police officer.

3

In this direct appeal, Jordan raises six claims of error. First and foremost, he contends that his convictions for felony murder and fleeing and eluding a police officer are tainted by an alternative-means error. Alternative means is a term we have adopted to describe a single offense that can be committed in more than one way. Alternative-means issues arise when the statute and jury instructions incorporating that statute list distinct alternatives for an element of the crime. Presenting an alternative-means crime to the jury can raise questions about whether jurors unanimously agreed on the means supporting their guilty verdict. But when a statute and any jury instruction incorporating that statute merely describe a material element of a crime or a factual circumstance that would prove the crime, such descriptions are "options within a means," not alternative means. Options within a means do not create distinct alternatives for an element of the crime and thus do not raise jury unanimity concerns.

Jordan argues the jury instructions on his fleeing-and-eluding charge created an alternative-means crime by listing more than one felony for which he was attempting to elude capture. But we hold that the underlying felony for which a defendant is attempting to elude capture under K.S.A. 2019 Supp. 8-1568(b)(2) is merely an option within a means and Jordan failed to establish error.

Second, Jordan claims the district court lost subject matter jurisdiction when the State substituted a grand jury indictment for a pending criminal complaint. But the indictment was sufficient to invoke the district court's jurisdiction under our established precedent, and the substitution of the indictment did not deprive the court of jurisdiction.

Third, in the alternative to his jurisdictional challenge, Jordan argues the substitution of the indictment deprived him of due process of law. But the indictment gave Jordan adequate notice of the charges and a meaningful opportunity to defend against them. Thus, the substitution procedure complied with Jordan's due process rights.

4

Fourth, Jordan argues that the statements he made to police should not have been admitted as evidence at trial because they were involuntary. But Jordan failed to lodge a timely and specific objection to this evidence at trial as required by K.S.A. 60-404. Jordan's failure to do so precludes appellate review of the issue.

Fifth, Jordan contends the prosecutor erred during closing argument by telling the jury that a State's witness had no motive to be untruthful. But the record confirms that the prosecutor's comment was tied to the evidence and made during a broader discussion of legitimate factors bearing on a witness' credibility. Thus, the statement fell just within the bounds of proper argument.

Finally, Jordan argues the cumulative impact of these trial errors deprived him of a fair trial. But the cumulative-error doctrine does not apply because Jordan failed to establish any error. For these reasons, we affirm the judgment of the district court.

FACTS AND PROCEDURAL BACKGROUND

On October 30, 2019, Jordan went to Fidelity State Bank in Topeka. Claiming he was Christopher Tabor, Jordan picked up a debit card linked to an account he had recently opened in Tabor's name. Jordan also deposited in part and cashed in part a check made out to Tabor, endorsing the check in Tabor's name. The check was fraudulent.

On November 7, 2019, Jordan pulled up to the drive-through of a different Fidelity State Bank location in Topeka. Shelley Cunningham was riding in the front passenger seat. Jordan tried to pass another check made out to Tabor. But the bank had flagged the account as fraudulent. So employees called 911 and tried to stall Jordan.

5

Lieutenant Michael Marnach with the Kansas Highway Patrol heard the call from dispatch. He responded to the scene, pulling up behind Jordan. Lieutenant Marnach was in uniform and driving a marked patrol vehicle. Jordan noticed Lieutenant Marnach in the rearview mirror and told Cunningham there was a police officer behind them. Jordan left the bank, turning onto Gage Boulevard. Lieutenant Marnach followed.

Jordan accelerated as he drove down Gage Boulevard, weaving in and out of traffic. Jordan then turned right onto a residential street. As Lieutenant Marnach turned onto the same street, he activated his lights and sirens. After following Jordan for about a block and a half, Lieutenant Marnach looked at his speedometer and saw he was going over 70 miles per hour. Jordan eventually ran a stop sign and broadsided an SUV. The SUV's driver, Dennis Affolter, later died of injuries he sustained in the crash.

At the scene of the accident, Jordan told two officers from the Topeka Police Department that he was Christopher Tabor. And he continued to identify himself as Tabor even after he and Cunningham were transported to the hospital. Eventually, officers determined Jordan's real identity. While in the hospital, Jordan told law enforcement he fled because he feared going back to jail.

Law enforcement searched the car Jordan had been driving. They found a laptop, a credit card in Tabor's name, a notebook containing what law enforcement believed to be bank account and routing numbers, a container with methamphetamine, and a pipe with marijuana. The laptop had software that enabled users to alter checks.

A reconstruction of the accident determined that Jordan was going about 86 miles per hour in a 35-mile-per-hour zone when he struck the driver's side of the SUV. The SUV was going about 30 miles per hour.

6

The State filed a criminal complaint charging Jordan with several offenses. But about a week later, a grand jury indicted Jordan of one count of first-degree felony murder, one count of fleeing and eluding, two counts of interference with law enforcement, two counts of forgery, one count of identity theft, one count of driving with a suspended license, and one count of reckless driving. The district court granted the State's motion to substitute the grand jury indictment and dismissed the complaint.

At trial, Cunningham testified that Jordan started speeding up right after leaving the bank's drive-through. She remembered that Jordan said he was not going to stop. She also remembered asking him to stop. But she could not recall whether she made that request before or after Jordan said he was not going to stop.

Jordan testified in his own defense. Jordan admitted that on the day of the crash, he was at the bank trying to pass a check written out to Tabor. He had been waiting in the bank drive-through for an unusually long time and was afraid someone may have called the police. When he saw Lieutenant Marnach's patrol vehicle, Jordan decided to leave.

Jordan admitted he was driving "pretty fast" down Gage Boulevard because he wanted to get away from the bank. But he said he did not see a police vehicle pursuing him. Jordan testified the windows of the car were up and the radio was on, so he never heard any sirens.

Jordan explained that he was wearing only his reading glasses at the time, even though he needs bifocals. As he approached the intersection where the crash occurred, he thought he saw lights in the rearview mirror. He asked Cunningham if there were lights behind them, and she confirmed there were. He was squinting and looking in the rearview mirror when he heard Cunningham yell, "look out," and then he hit the SUV.

7

Jordan thought he was going 55 to 60 miles per hour before the accident. He denied telling Cunningham he was not going to stop. But he admitted using the name Christopher Tabor several times after the accident.

The jury convicted Jordan on all counts. The district court sentenced Jordan to a controlling term of life imprisonment without the possibility of parole for 25 years.

Jordan directly appeals his convictions to our court. Jurisdiction is proper. K.S.A. 2022 Supp. 22-3601(b)(3)-(4) (life sentence and off-grid crimes appeal directly to Supreme Court).

ANALYSIS

As noted, Jordan raises six issues on appeal. We address these issues in the order presented in his briefing.

I. *Jordan's Felony-Murder and Fleeing-and-Eluding Convictions Are Not Tainted by an Alternative-Means Error*

Jordan argues his convictions for felony murder and fleeing and eluding must be reversed due to an alternative-means error. Jordan was charged with, and the jury was instructed on, committing felony fleeing and eluding under K.S.A. 2019 Supp. 8-1568(b)(1) (committing certain acts during police pursuit) *and* K.S.A. 2019 Supp. 8-1568(b)(2) (attempting to elude capture for any felony). We have held that these two subsections create alternate means of committing the offense. See *State v. Davis*, 312 Kan. 259, 266, 474 P.3d 722 (2020) (fleeing-and-eluding statute sets out alternative means in subsections [b][1] and [b][2]). The fleeing-and-eluding charge also served as the inherently dangerous felony supporting Jordan's felony-murder charge. See K.S.A. 2019 Supp. 21-5402(c)(1)(R). Thus, both Jordan's felony-murder charge and his fleeing-

and-eluding charge were alternative-means crimes. See 312 Kan. at 262 (felony murder is alternative-means crime if based on alternative means of fleeing and eluding).

But the focus of Jordan's argument is not on the alternate means of committing felony fleeing and eluding under K.S.A. 2019 Supp. 8-1568(b)(1) and subsection (b)(2). Instead, he claims there is yet another alternative-means issue within K.S.A. 2019 Supp. 8-1568(b)(2). Jordan argues the district court's instructions presented the jury with alternative means of committing fleeing and eluding under subsection (b)(2) by listing two underlying felonies for which he was attempting to elude capture—forgery and identity theft. And he claims there was insufficient evidence to support a conviction for one of those alleged means—identity theft.

To resolve this issue, we first identify additional facts relevant to our analysis. Then, we determine whether the district court presented the jury with an alternative means crime. To do that, we interpret K.S.A. 2019 Supp. 8-1568(b)(2) to decide whether the Legislature intended to create an alternative means crime. Through that analysis, we conclude that subsection (b)(2) merely creates options within a means. And because Jordan fails to meet this threshold inquiry, we need not address the additional steps of an alternative-means error analysis.

A. *Relevant Facts*

The jury was instructed that to establish the crime of felony murder, the State must prove beyond a reasonable doubt that Jordan killed Affolter and the killing was done while Jordan was committing fleeing and eluding.

The elements instructions on fleeing and eluding incorporated elements of fleeing and eluding under K.S.A. 2019 Supp. 8-1568(b)(1)(C) (engaging in reckless driving during police pursuit), K.S.A. 2019 Supp. 8-1568(b)(1)(D) (involved in motor vehicle

9

accident during police pursuit), and K.S.A. 2019 Supp. 8-1568(b)(2) (attempting to elude capture for any felony). For purposes of subsection (b)(2), the instruction specifically alleged that Jordan was attempting to elude capture for "forgery and/or identity theft":

"Brandon Jordan is charged in Count 3 with fleeing or attempting to elude a police officer. Mr. Jordan pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. Brandon Jordan was driving a motor vehicle.

"2. Brandon Jordan was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.

"3. Brandon Jordan willfully failed to or refused to bring the motor vehicle to a stop for, or otherwise fled or attempted to elude, a pursuing police vehicle.

"4. The police officer's vehicle, from which the signal to stop was given, was appropriately marked showing it to be an official police vehicle.

"5. *Brandon Jordan was engaged in reckless driving and/or was involved in a motor vehicle accident and/or attempted to elude capture for forgery and/or identity theft.*

"6. This act occurred on or about the 7th day of November, 2019, in Shawnee County, Kansas." (Emphasis added.)

The district court also gave separate instructions on the elements of forgery and identity theft. See K.S.A. 2019 Supp. 21-5823(a)(2); K.S.A. 2019 Supp. 21-6107(a)(1).

The jury convicted Jordan of felony murder, fleeing and eluding, forgery, identity theft, and reckless driving, among other offenses.

10

B. *Standard of Review and Relevant Legal Framework*

The term "alternative-means crime" refers to a crime which can be committed in more than one way. *State v. Rucker*, 309 Kan. 1090, 1094, 441 P.3d 1053 (2019). The Legislature creates an alternative-means crime by enacting criminal statutes which list distinct alternatives for an element of the crime. See *State v. Brown*, 295 Kan. 181, 199-200, 284 P.3d 977 (2012). And the district court presents the jury with an alternative-means crime by giving jury instructions that incorporate more than one of the distinct statutory alternatives for an element of the crime. *State v. Sasser*, 305 Kan. 1231, 1239, 391 P.3d 698 (2017). Presenting the jury with an alternative-means crime can raise questions about whether the jury unanimously agreed on the means supporting its guilty verdict. See *Brown*, 295 Kan. at 188. And Kansas criminal defendants have a statutory right to a unanimous verdict. See K.S.A. 22-3421 and K.S.A. 22-3423(1)(d); *State v. Thomas*, 302 Kan. 440, 448, 353 P.3d 1134 (2015) ("In Kansas, a criminal defendant has a statutory right to a unanimous jury verdict.").

In contrast, when criminal statutes merely "describ[e] a material element" or "the factual circumstances in which a material element may be proven," the Legislature has created options within a means, not alternative means. *Brown*, 295 Kan. at 194, 196-97. Options within a means describe secondary matters that "do not state additional and distinct ways of committing the crime." 295 Kan. at 196. Thus, such options do not trigger statutory jury-unanimity protections, even when included in the jury instructions. 295 Kan. at 197, 200.

When analyzing alternative-means claims, the first consideration is whether the district court presented an alternative-means crime to the jury. See *Brown*, 295 Kan. at 193. To determine that, the reviewing court looks to the relevant statute's language and structure to decide whether the Legislature meant to list distinct alternatives for an

11

element of the crime. "Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law," and our review is unlimited. 295 Kan. at 193-94.

If alternative means were not presented, the error inquiry ends. 295 Kan. at 200. In other words, we move on to consider the sufficiency of the evidence supporting each means only when the district court has presented an alternative-means crime to the jury. See *State v. Butler*, 307 Kan. 831, 841, 416 P.3d 116 (2018).

C. *Specifying the Underlying Felonies for Fleeing and Eluding Under K.S.A. 2019 Supp. 8-1568(b)(2) Creates Options Within a Means, Not Alternative Means*

As noted, Jordan does not focus his argument on the alternative means of committing fleeing and eluding created by K.S.A. 2019 Supp. 8-1568(b)(1) and (b)(2). In fact, Jordan acknowledges the sufficiency of the evidence supporting a conviction for fleeing and eluding under subsection (b)(1). And Jordan does not dispute that the State presented sufficient evidence that he committed fleeing and eluding under subsection (b)(2) by attempting to evade capture for forgery.

Instead, Jordan argues that the district court presented an additional alternative-means crime to the jury by identifying more than one felony for which he was attempting to elude capture under K.S.A. 2019 Supp. 8-1568(b)(2)—forgery and identity theft. And Jordan argues alternative-means error exists because the State offered insufficient evidence for one of those alleged means—attempting to elude capture for identity theft.

To prevail, Jordan must first show that the district court presented the jury with an alternative-means crime by listing different underlying felonies for fleeing and eluding

12

under K.S.A. 2019 Supp. 8-1568(b)(2). See *Davis*, 312 Kan. at 265 (touchstone of the inquiry is whether Legislature intended to create alternative means of committing the offense).

If, on the other hand, the district court presented the jury with options within a means, then no alternative-means error exists, and the inquiry ends there. In that scenario, the State need not prove that Jordan tried to elude capture for both forgery and identity theft. It is sufficient to prove that Jordan tried to elude capture for forgery alone. See *Brown*, 295 Kan. at 197-98; *State v. Brooks*, 298 Kan. 672, 677, 317 P.3d 54 (2014). Jordan does not challenge the sufficiency of the evidence showing that he tried to elude capture for forgery under K.S.A. 2019 Supp. 8-1568(b)(2). Thus, if K.S.A. 2019 Supp. 8-1568(b)(2) creates options within a means, this conclusion disposes of Jordan's claim.

Turning to K.S.A. 2019 Supp. 8-1568(b)(2), we must decide whether the Legislature intended to "'list alternative distinct, material elements of a crime'" or, instead, to merely "'describe a material element or to describe the factual circumstances in which a material element may be proven.'" *Davis*, 312 Kan. at 265 (quoting *Brown*, 295 Kan. at 194, 196-97). To discern legislative intent, we look to the statute's plain language. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). The focus of our analysis is the statute, not the jury instructions, because "only the language of a statute can create alternative means for a crime." *State v. Cottrell*, 310 Kan. 150, 160, 445 P.3d 1132 (2019).

K.S.A. 2019 Supp. 8-1568(b)(2) provides:

> "Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police

13

vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, and who . . . *is attempting to elude capture for the commission of any felony*, shall be guilty as provided in subsection (c)(2)." (Emphasis added.)

"'Typically . . . a legislature will signal its intent to state alternative means through structure, separating alternatives into distinct subsections of the same statute.'" *Davis*, 312 Kan. at 265. Here, K.S.A. 2019 Supp. 8-1568(b)(2) does not list any underlying felonies which could support a conviction, let alone list them in separate subsections.

Instead, the statute's plain language criminalizes eluding capture for "any felony." The use of the indefinite adjective "any," without further elaboration or clarification anywhere in the statute, suggests the specific felony for which one is attempting to elude capture is immaterial. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/any (defining the adjective "any" as "one or some indiscriminately of whatever kind"); American Heritage Online Dictionary, https://www.ahdictionary.com/word/search.html?q=any (defining the adjective "any" as "[o]ne or some; no matter which"). Another statute in Kansas' criminal code does define a "felony" to include any "crime punishable by death or by imprisonment in any state correctional institution or a crime which is defined as a felony by law." K.S.A. 2022 Supp. 21-5102(a). But this definition does little to narrow the list of possible offenses for which one can elude capture under K.S.A. 2019 Supp. 8-1568(b)(2). Together, this plain language suggests that the precise felony or felonies from which a defendant attempted to elude capture is a secondary matter that does not create an alternative-means offense. See *Brown*, 295 Kan. 181, Syl. ¶ 10 (definitional statutory language that merely elaborates on elements rather than defining the subject crime signals a secondary matter that does not raise an alternative-means issue).

14

Moreover, the nature of the conduct criminalized under K.S.A. 2019 Supp. 8-1568(b)(2) does not change depending on the underlying felony. The primary conduct that distinguishes the means under subsection (b)(2) from the means under subsection (b)(1) is eluding or "evading capture" for any felony. See *Davis*, 312 Kan. at 266 (finding material difference between fleeing and eluding under K.S.A. 2019 Supp. 8-1568[b][1] and [b][2] because subsection [b][1] criminalizes "dangerous driving" while subsection [b][2] criminalizes "evading capture"). And the character of that conduct remains the same whether an offender is attempting to evade capture for one felony (such as forgery) or another (such as identity theft). This further supports our conclusion that the specific felony for which the defendant is attempting to evade capture merely describes a factual circumstance proving the element of attempting to elude capture for a felony.

Rather than focusing on the statutory language, Jordan focuses on the jury instructions. He claims that by specifying certain underlying felonies, the fleeing and eluding instructions created alternative means of committing the crime under K.S.A. 2019 Supp. 8-1568(b)(2). For support, he relies on *Sasser*, where we described the unique character of alternative-means error:

> "An alternative means error is not just about sufficiency of the evidence. It is a jury unanimity error injected into a trial through the confluence of the instructions given to the jury and the lack of evidence to support one or more means of committing the crime as set out in the instructions. This circumstance generates uncertainty about the verdict because, absent sufficient evidence that the defendant employed each one of the means submitted to the jury, it is possible jurors 'may have based their finding[s] of guilt on an invalid ground.'" 305 Kan. at 1236.

Jordan believes *Sasser* suggests that jury instructions can create jury-unanimity issues independent of the relevant statute. But he misreads the decision. *Sasser* merely explained the unique nature of alternative-means errors—they are jury-unanimity problems created by the confluence of insufficient evidence and instructional error. See

15

305 Kan. at 1237 (an alternative-means error "can only occur when the lack of evidence is combined with overbroad language in the jury instructions"); see also *Brown*, 295 Kan. at 226 (Moritz, J., concurring) ("In analyzing alternative means cases, we blend concepts of sufficiency of the evidence . . . with instructional error . . . .").

The jury instructions are the mechanism by which a statutory alternative-means offense is presented to the jury. And an alternative-means issue can arise only if the jury instructions incorporate more than one statutory means for committing a crime. But it is the statute, and not the instructions, that creates those alternative means. "[A] jury instruction that lists descriptions of how a material element might be satisfied does not, on its own, create alternative means. To hold otherwise would permit a jury instruction to override legislative intent and effectively revise the criminal code." *Cottrell*, 310 Kan. at 160; see also *Brown*, 295 Kan. at 200 (even if included in a jury instruction, options within a means do not raise a sufficiency issue that requires a court to examine whether the option is supported by evidence).

In sum, we hold that the district court did not present an alternative-means crime to the jury by listing more than one felony in the elements instruction for K.S.A. 2019 Supp. 8-1568(b)(2). Granted, the district court did present alternative means of committing the offense of fleeing and eluding under K.S.A. 2019 Supp. 8-1568(b) by instructing the jury on the means set forth in both subsection (b)(1) and (b)(2). But Jordan does not dispute that the State presented sufficient evidence to support his conviction for fleeing and eluding under K.S.A. 2019 Supp. 8-1568(b)(1) both by engaging in reckless driving and by being involved in a motor vehicle accident during a police pursuit—both being options within a means under this subsection of the statute. *State v. Castleberry*, 301 Kan. 170, 184-85, 339 P.3d 795 (2014) (acts listed in K.S.A. 2009 Supp. 8-1568[b][1] are options within a means, not alternative means).

16

Jordan also concedes that the State presented sufficient evidence that he was attempting to evade capture for forgery under K.S.A. 2019 Supp. 8-1568(b)(2). Our review of the record confirms that Jordan's concession is well-founded.

Jordan's claim of error rests only on the sufficiency of the evidence showing he was also attempting to evade capture for identity theft. But as noted, the district court presented the jury with options within a means by listing more than one felony in the relevant instructions for K.S.A. 2019 Supp. 8-1568(b)(2). Thus, the State was not required to present sufficient evidence that Jordan was also trying to elude capture for identity theft. See *Brooks*, 298 Kan. at 677 (lack of evidence supporting one option within a means does not require reversal).

We reject Jordan's claim of alternative-means error and affirm his convictions for felony murder and felony fleeing and eluding.

II. *The District Court Did Not Lose Subject Matter Jurisdiction over Jordan's Case when It Allowed the State to Substitute an Indictment for the Complaint*

Jordan next argues the district court lost subject matter jurisdiction when it granted the State's motion to substitute a grand jury indictment for a pending complaint.

The State originally filed a complaint charging Jordan with first-degree felony murder, fleeing and eluding, interference with law enforcement, driving while suspended, and reckless driving. But about a week later, while the complaint was pending, a grand jury returned an indictment charging Jordan with all the crimes listed in the complaint along with two new counts of forgery and one new count of identity theft.

17

The State quickly moved to substitute the indictment for the complaint. In its motion, the State argued that K.S.A. 22-3201—which provides that a prosecution in the district court will be upon complaint, indictment, or information—does not prohibit the substitution of a grand jury indictment for a complaint. At a motion hearing, Jordan objected to the substitution, arguing the State was incorrectly interpreting the statute and the substitution deprived him of due process of law. The district court granted the State's motion, reasoning that the substitution aligned with caselaw allowing the State to refile charges after an earlier dismissal. The court then dismissed the original complaint.

Jordan now argues that the district court lost jurisdiction over his case when it allowed the State to substitute the indictment for the complaint. He contends that a district court acquires jurisdiction over a criminal case only if the State charges a crime in accordance with Kansas law. And he claims that his prosecution was not in accordance with Kansas law because no statute expressly permits the substitution of an indictment.

A. *Standard of Review and Relevant Legal Framework*

"The question of whether subject matter jurisdiction exists is one of law subject to unlimited review on appeal." *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). Subject matter jurisdiction can be raised at any time, including for the first time on appeal. *Miller v. Preisser*, 295 Kan. 356, 382, 284 P.3d 290 (2012). Thus, this issue is properly before us, even though Jordan did not raise the jurisdictional challenge below.

In criminal cases, the Kansas Constitution confers subject matter jurisdiction on district courts. *State v. Aguirre*, 313 Kan. 189, 224, 485 P.3d 576 (2021). But "'jurisdiction is acquired in a criminal case upon the filing or amendment of a complaint, indictment, or information.'" *State v. Samuel*, 309 Kan. 155, 157, 432 P.3d 666 (2019). Put another way, while the Kansas Constitution bestows subject matter jurisdiction on the

18

district courts, the State must still properly invoke that jurisdiction through a charging document. See *Dunn*, 304 Kan. at 812 ("If the charging document is instead statutorily insufficient, then the State has failed to properly *invoke* the subject matter jurisdiction of the court . . . . The problem is not a substantive absence of jurisdiction; it is a procedural failure to demonstrate its existence.").

In *Dunn*, we held that a charging document must meet three requirements. It must (1) show the case has been filed in the correct court; (2) show the court has territorial jurisdiction over the crime; and (3) allege facts that, if proved beyond reasonable doubt, would constitute a crime under Kansas law. 304 Kan. 773, Syl. ¶ 2.

B. *The Indictment Was Sufficient to Invoke the District Court's Jurisdiction*

The grand jury indictment satisfies *Dunn*'s requirements for invoking the Shawnee County District Court's subject matter jurisdiction. The indictment established that the district court, rather than a municipal court, was the proper forum for prosecution. See K.S.A. 22-2601 (except as otherwise provided, district court has exclusive jurisdiction over felonies and other criminal cases arising under state statute). And it alleged that Jordan committed the crimes in Shawnee County, where the indictment was filed. See K.S.A. 22-2602 (prosecution must be in county where the crime was committed); see also Kan. Const. Bill of Rights, § 10 (accused entitled to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed"). Finally, the indictment alleged facts that, if proven, would establish Jordan committed crimes recognized in Kansas. 304 Kan. at 811-12 (charging document is sufficient if "it has alleged facts that would establish the defendant's commission of a crime recognized in Kansas").

19

C. *Substitution of the Indictment Did Not Deprive the District Court of Jurisdiction*

Granted, Jordan does not dispute that the indictment was sufficient to invoke the district court's jurisdiction when viewed in isolation. Instead, he suggests the district court lost jurisdiction when it allowed the State to substitute the indictment for the complaint. Jordan argues the district court only has jurisdiction over criminal cases that are prosecuted in accordance with state statute and Kansas statute does not authorize substitution of an indictment for the original complaint.

Jordan notes that Kansas statutes make clear that a complaint, indictment, or information is necessary to *initiate* a criminal prosecution. See K.S.A. 22-3201(a) ("Prosecutions in the district court shall be upon complaint, indictment or information."); K.S.A. 22-2301 ("Unless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate."); K.S.A. 22-2303 ("When an indictment is returned, as provided by K.S.A. 22-3011, and amendments thereto, a prosecution shall be deemed to have been begun."). And he is correct that these same statutes do not explicitly authorize the substitution of one charging document for another. But, as the State observes, these statutes do not prohibit substitution either. Rather, the statutes are silent on this procedure. And statutory silence is not akin to statutory prohibition.

Moreover, substituting an indictment in place of the original complaint aligns with our precedent addressing charging documents. As noted, the indictment satisfied *Dunn's* requirements for properly invoking the district court's subject matter jurisdiction. See 304 Kan. 773, Syl. ¶ 2.

We have also held that the dismissal of a complaint (either at the State's request or because of a failure to show probable cause at a preliminary hearing) does not bar the State from initiating another prosecution on the same charges. See *State v. Harris*, 266

20

Kan. 610, 614, 975 P.2d 227 (1999) ("A discharge from custody at the end of a preliminary examination is not a bar to another prosecution on the same charges."); *State v. Rowland*, 172 Kan. 224, 227-28, 239 P.2d 949 (1952) ("[T]his court long ago decided that the entering of a *nolle prosequi* with consent of the trial court did not prejudice a fresh prosecution on a new information charging the identical offense set forth in the prior information."). Here, the order of actions was simply reversed—the indictment was filed before the complaint was dismissed. But neither Kansas statute nor our caselaw suggests the sequencing of these events is of any jurisdictional significance.

Faced with a similar challenge in *People v. Huynh*, 98 P.3d 907, 910 (Colo. App. 2004), the Colorado Court of Appeals held that substitution of an indictment did not deprive the district court of subject matter jurisdiction. There, a grand jury returned an indictment after the State had filed a complaint, and the trial court granted the State leave to dismiss the complaint. Like Jordan, the defendant in *Huynh* argued that his convictions must be reversed because they were obtained under an indictment which did not confer jurisdiction upon the trial court. But the Colorado Court of Appeals rejected his argument. It reasoned that Colorado's rules of criminal procedure "neither explicitly allow nor prohibit the filing of an indictment while a previously filed complaint or information is still pending." 98 P.3d at 910. And under Colorado law, a grand jury indictment may be filed after a court has dismissed an information for lack of probable cause at a preliminary hearing. Thus, the Colorado Court of Appeals concluded that there was "no reason why a grand jury indictment cannot be substituted for a pending complaint or information." 98 P.3d at 910.

Like Colorado, Kansas' rules of criminal procedure neither explicitly allow nor prohibit the filing of an indictment while a complaint is pending. And our precedent allows the State to file an indictment after a previous criminal complaint has been dismissed (either at the State's request or because of a failure to show probable cause at a preliminary hearing). We find the rationale in *Huynh* persuasive.

21

Even so, Jordan argues that K.S.A. 22-2601 prohibited the substitution of the indictment for the complaint in his case. That jurisdictional statute provides: "Except as provided in K.S.A. 12-4104, and amendments thereto, the district court shall have exclusive jurisdiction to try all cases of felony and other *criminal cases arising under the statutes of the state of Kansas*." (Emphasis added.) K.S.A. 22-2601. Jordan interprets the italicized statutory language to mean that district courts have jurisdiction over criminal cases only if they are charged in accordance with Kansas' statutory rules of criminal procedure, and he argues that those rules do not expressly authorize a district court to substitute an indictment for a pending complaint.

But Jordan's interpretation of K.S.A. 22-2601 is flawed. The statutory language central to his argument ("criminal cases arising under the statutes of the state of Kansas") does not refer to how a criminal case is charged. Rather, it refers to those substantive crimes defined in the criminal code. When read in its entirety, it is apparent the Legislature intended K.S.A. 22-2601 to differentiate the subject matter jurisdiction of district courts from municipal courts. And this interpretation is bolstered by the statute's reference to K.S.A. 12-4104, which grants municipal courts jurisdiction to hear cases involving violations of a city ordinance. See *Kelly*, 316 Kan. at 224 (even when statute's language is clear, courts must still consider various provision *in pari materia* to reconcile and bring those provisions into harmony). Thus, K.S.A. 22-2601 does not support Jordan's argument. And we hold that the district court retained jurisdiction over Jordan's case after it substituted the indictment for the complaint.

III. *Substitution of the Indictment Did Not Violate Jordan's Due Process Rights*

Alternatively, Jordan argues the district court violated his due process rights by substituting the grand jury indictment.

22

"[W]hether a defendant's due process rights are violated is a question of law over which this court exercises de novo review." *State v. Turner*, 300 Kan. 662, 675-76, 333 P.3d 155 (2014). The Fifth and Fourteenth Amendments to the United States Constitution provide every criminal defendant with the right to due process before they can be deprived of life, liberty, or property. *Dunn*, 304 Kan. at 814. And we have "long recognized that a criminal defendant has a right under the Sixth Amendment to notice of the charge or charges pursued by the State." 304 Kan. at 814. Likewise, "[s]ection 10 of the Kansas Constitution Bill of Rights contains its own requirement that a criminal defendant be informed of the charges against him or her." 304 Kan. at 814. A charging document meets these constitutional standards for due process and notice if "the defendant has an opportunity to meet and answer the State's evidence and prevent double jeopardy." 304 Kan. at 815.

In other words, due process entitles Jordan to adequate notice of the charges against him and an opportunity to defend against those charges. See *State v. Juarez*, 312 Kan. 22, 24, 470 P.3d 1271 (2020) ("'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."'"); *Dunn*, 304 Kan. 814-15. The grand jury indictment and the district court's substitution of the indictment for the pending complaint satisfied these due process requirements.

The grand jury returned its indictment on November 21, 2019, a week after the State had filed the original complaint. On November 25, 2019, the State moved to substitute the indictment for the complaint. On December 20, 2019, the district court granted the State's motion. Jordan's trial began almost two years later in August 2021.

Jordan has failed to show that the substitution of the indictment deprived him of adequate notice of the charges or a meaningful opportunity to defend against them. The substitution of the indictment did deprive Jordan of the opportunity to participate in a preliminary hearing. But we have held that the purpose of a preliminary examination is to

23

determine the existence of probable cause. *State v. Knighten*, 260 Kan. 47, 56, 917 P.2d 1324 (1996). "Once a grand jury has handed down an indictment, a determination of probable cause has been made and a preliminary hearing is no longer necessary." 260 Kan. at 56; see *State v. Green*, 260 Kan. 471, 473, 920 P.2d 414 (1996). And because the right to a preliminary hearing is purely statutory, it does not implicate due process. *Knighten*, 260 Kan. at 55.

IV. *Jordan Did Not Preserve His Challenge to the Admission of His Statements to Police*

Jordan claims the statements he made to police were involuntary and the district court erred by admitting a recording of those statements at trial. While Jordan challenges the voluntariness of his statements on appeal, he did not file a pretrial motion to suppress those statements. Instead, the State brought the issue to the district court's attention by filing a "Notice of Intent to Offer Statements of the Defendant," and the district court held a *Jackson v. Denno* hearing in response to that notice. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). After the hearing, the district court ruled that Jordan's statements were voluntary under the totality of the circumstances.

Jordan claims that he preserved his challenge to the voluntariness of his statements to police by litigating the issue pretrial. But K.S.A. 60-404 requires a party to make a timely and specific objection to the evidence at trial to preserve the issue for appellate review. See *State v. Keys*, 315 Kan. 690, 711, 510 P.3d 706 (2022) ("K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record."). And pretrial litigation of the evidentiary issue alone fails to satisfy this legislative mandate. See *State v. Ballou*, 310 Kan. 591, 613, 448 P.3d 479 (2019) (a pretrial objection alone is not timely under K.S.A. 60-404 because the ruling is subject to change).

24

Jordan failed to object to the admission of his statements at trial. The failure to satisfy K.S.A. 60-404's contemporaneous-objection rule precludes our review of Jordan's issue. See *State v. Hollingsworth*, 289 Kan. 1250, 1256-57, 221 P.3d 1122 (2009) (defendant failed to preserve challenge to voluntariness of statements to police when defendant made no timely and specific objection at trial, even though *Jackson v. Denno* hearing had been held).

V. *The Prosecutor Did Not Commit Error During Closing Argument by Commenting on the Credibility of a State's Witness*

Next, Jordan claims the prosecutor committed error during closing argument by telling the jury that Cunningham told the truth.

During the rebuttal portion of her closing argument, the prosecutor discussed Cunningham's testimony. She identified portions of Cunningham's testimony that might be more susceptible to critique under legitimate factors bearing on the witness' credibility. The prosecutor then distinguished those statements from Cunningham's testimony that Jordan said he was not going to stop for the pursuing officers. The prosecutor argued that this testimony mirrored prior statements Cunningham had made to police. The prosecutor then asked what motive Cunningham had to be untruthful about that testimony and suggested Cunningham had none:

> "I want to discuss Shelley Cunningham and her testimony a bit. She may have minimized her relationship with the Defendant or her involvement with drugs located in the car, or her involvement with the forgery and the identity theft, but think about what she said about the pursuit and the crash. She testified that she told the Defendant to stop, and he said he wasn't going to stop. She told Trooper Taylor at the hospital the same thing. And then she told Detective Kinnett, in December of '19 when she was interviewed the exact same thing. After telling the Defendant to stop the car, he said, 'I'm not going to

25

stop.' That fact never changed. Ask yourself, what motivation does Ms. Cunningham have to not be truthful about that particular fact? *I submit to you that there's absolutely no reason. What did she have to gain from that?*" (Emphasis added.)

Jordan challenges the italicized comments, arguing the remarks improperly vouched for the witness.

A. *Standard of Review and Relevant Legal Framework*

To determine whether prosecutorial error occurred, we consider whether the challenged prosecutorial acts "fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). If error is found, we then determine whether the error prejudiced the defendant's right to a fair trial. 305 Kan. at 109.

While prosecutors have broad latitude in crafting their arguments and drawing reasonable inferences from the evidence, we have repeatedly held that telling the jury that a witness told the truth falls outside that broad latitude. *State v. Hachmeister*, 311 Kan. 504, 519, 464 P.3d 947 (2020); *State v. Hirsh*, 310 Kan. 321, 342, 446 P.3d 472 (2019). Even so, our caselaw distinguishes between arguments expressing an opinion about a witness' credibility and arguments discussing legitimate factors a jury may consider in assessing credibility. *Hachmeister*, 311 Kan. at 519; *State v. Anderson*, 308 Kan. 1251, 1261, 427 P.3d 847 (2018). The former falls outside the bounds of proper argument while the latter does not. *Hachmeister*, 311 Kan. at 519.

One legitimate factor for the jury to consider in assessing witness credibility is a witness' motive to be dishonest. *State v. Ortega*, 300 Kan. 761, 777, 335 P.3d 93 (2014). Thus, we have approved of a prosecutor's use of rhetorical questions to encourage the

26

jury to consider whether a witness has any motive to be untruthful. 300 Kan. at 777. Likewise, "[p]rosecutors may comment on a witness' lack of motivation to be untruthful but must base these comments on the evidence and reasonable inferences from the evidence without stating their own personal opinion concerning the witness' credibility." *Hachmeister*, 311 Kan. at 519.

### B. *The Prosecutor's Comments Fall Just Within the Bounds of Proper Argument*

The prosecutor's rhetorical question inviting jurors to consider what motive Cunningham had to be untruthful fell within the bounds of proper argument. See *Ortega*, 300 Kan. at 777. But the prosecutor did not stop there. She then answered her own rhetorical question: "I submit to you that there's absolutely no reason."

In *State v. Sprague*, 303 Kan. 418, 362 P.3d 828 (2015), we held that a prosecutor erred by making a similar comment. There, the prosecutor expressed her opinion about the victim and two witnesses' motive to lie, arguing:

> "'Because Kandi Sprague may have spent more time on the internet, and many people do, doesn't justify her death, that she may not have been the parent that some people may have wanted her to be in that timeframe, doesn't justify her death. Steven Peacock and Jennifer Helm, you are not asked to judge whether they are good people or bad people, whether you like them or don't like them. *But I submit they don't have any motive in coming in here and testifying.*'" 303 Kan. at 428.

We held that the italicized comment was improper because "whether or not the State was improperly bolstering the credibility of its witnesses, the prosecutor was commenting on facts outside of the evidence and was injecting her personal opinion regarding witnesses' motives." 303 Kan. at 429.

27

When viewed in isolation, the prosecutor's comment that "there's absolutely no reason" for Cunningham to be untruthful looks like the type of argument we disapproved of in *Sprague*. But we do not consider a prosecutor's comment in isolation because "context matters." *State v. Blansett*, 309 Kan. 401, 412-13, 435 P.3d 1136 (2019). "Often the line between permissible and impermissible argument is context dependent." *State v. Martinez*, 311 Kan. 919, 923, 468 P.3d 319 (2020). Such is the case here.

In *Sprague*, the prosecutor did not discuss how the jury should assess witness credibility. Instead, the prosecutor asked jurors not to let their personal judgments about the victim and witnesses influence their verdict. The prosecutor's subsequent comment about the witnesses' motives to be honest were neither tied to the evidence nor made within a broader discussion about factors bearing on the credibility of a witness.

But here, the prosecutor made the challenged statement while explaining how the jury should assess Cunningham's credibility. She suggested that portions of Cunningham's testimony might be less credible than others. Specifically, the prosecutor suggested that Cunningham had motive to be less than forthright when the testimony reflected poorly on her character or reputation. For instance, the prosecutor suggested that Cunningham may have had motive to minimize her relationship with Jordan or her drug use. The prosecutor contrasted that testimony with Cunningham's testimony that Jordan said he was not going to stop for the police. The prosecutor noted that testimony had no bearing on Cunningham's character or reputation and mirrored her prior statements to police. And through rhetorical questions, the prosecutor encouraged the jury to consider what potential motives, if any, Cunningham could have to be untruthful on this point. In short, the prosecutor's statement suggesting Cunningham had no motive to lie was made within a larger discussion about legitimate factors bearing on witness credibility and how those factors related to the trial evidence.

28

"A prosecutor who speculates about witness motives walks a fine line between 'explaining to juries what they should look for in assessing witness credibility,' and 'improperly bolstering the credibility of its witnesses' by 'injecting [his or] her personal opinion regarding witnesses' motives.' [Citations omitted.]" *Anderson*, 308 Kan. at 1261. And here, the prosecutor "teetered on that fine line" by suggesting that Cunningham had no motive to be untruthful. 308 Kan. at 1261. But by tying her comment to the evidence and to legitimate factors bearing on witness credibility, her argument fell just within the wide latitude afforded prosecutors in closing argument, even if by only the slightest margin. See *Hachmeister*, 311 Kan. at 519 (prosecutor's comments that witnesses had "no skin in the game" or "agenda" were not erroneous because they were based on reasonable inferences drawn from the evidence). We hold that the prosecutor's statement did not constitute error.

## VI. *The Cumulative-Error Doctrine Does Not Apply*

Finally, Jordan argues cumulative error deprived him of a fair trial. But the cumulative-error doctrine does not apply here because Jordan has failed to establish any trial errors. *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023).

## CONCLUSION

Jordan has failed to establish any of his six claims of error. While both his felony-murder charge and his fleeing-and-eluding charge were alternative-means crimes, his charge of fleeing and eluding under K.S.A. 2019 Supp. 8-1568(b)(2) was not. The substitution of the grand jury indictment for the complaint did not deprive the district court of subject matter jurisdiction or violate Jordan's due process rights. Jordan failed to preserve his challenge to the voluntariness of his statements to police by lodging a timely and specific objection to the admission of that evidence at trial. The prosecutor's

29

statement that Cunningham had no motive to lie fell just within the bounds of proper argument because she tied her comment to the evidence and legitimate factors bearing on a witness' credibility. And the cumulative error doctrine does not apply because Jordan failed to show any trial error. We thus affirm Jordan's convictions and sentence.

Judgment of the district court is affirmed.