NOT DESIGNATED FOR PUBLICATION

No. 126,901

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN M. MANCZUK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed July 18, 2025. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., HILL and ARNOLD-BURGER, JJ.

PER CURIAM: Steven M. Manczuk appeals his convictions for rape, aggravated criminal sodomy, sexual exploitation of a child, and solicitation of capital murder, raising multiple claims of error for each conviction. After reviewing the issues presented, we find no reversible error and affirm Manczuk's convictions.

1

In 2022, the State charged Manczuk with several child sex-offenses alleged to have occurred between 2011 and 2013. Two of the counts—rape and aggravated criminal sodomy—involved R.S. (born in 1999). The third count—sexual exploitation of a child—involved R.S. as well as her older brother H.S. (born in 1998). In March 2023, the State added a charge of solicitation to commit capital murder. This charge stemmed from Manczuk speaking with other inmates about killing R.S. and H.S. to prevent them from testifying at trial on his other charges.

Manczuk moved to dismiss the child sex-offenses, arguing they were beyond the applicable statute of limitations. Manczuk also contended his due process rights were violated because the State delayed filing charges from June 2013, when the allegations were first investigated. The district court denied his motion to dismiss. We will address his claims in more detail below.

We glean the facts from the jury trial.

R.S. testified that Manczuk's brother (T.M.) began sexually abusing her when she was around four years old, after which Manczuk also began sexually abusing her when she was around five years old. At the time, R.S. lived at a house in Kansas City with her mother, T.M., and her siblings. Manczuk would inappropriately touch R.S. every time he came to visit. Later, when R.S. was 10 years old, her family moved into a house in Leavenworth where Manczuk was also staying. After that, Manczuk continued touching R.S. and began taking pictures of R.S. R.S. identified several pictures of herself wearing a bra that were taken by Manczuk or herself at his direction while she was between 10 and 12 years old. R.S. also testified that Manczuk would drive her places, where another person would perform sexual acts on her in the backseat of Manczuk's vehicle while he took pictures or videos. R.S. recalled Manczuk taking her to a junkyard, where he

touched her breasts, "play[ed] with [her] vagina," and forced her to orally stimulate his genitals. Manczuk also took R.S. to Wyandotte County Park, where he touched and kissed her.

Although the abuse from Manczuk and T.M. mostly occurred separately, R.S. testified about one incident involving both of them when she was "[e]ither 11 or 12" at the house in Leavenworth. The family was constructing a loft in the garage and R.S. ended up alone with the two men. T.M. told her to get undressed and began having sex with her, then Manczuk had her perform oral sex on him. The two men then "switched" and R.S. began performing oral sex on T.M. while Manczuk had sex with her.

H.S. testified that T.M. began molesting him when he was about seven years old. At the same time, T.M. began encouraging H.S. and R.S.—who was six years old at the time—to sexually abuse each other. Although H.S. said Manczuk never touched him, H.S. recalled Manczuk was present "once or twice" when H.S. was sexually abusing R.S. H.S. also recalled Manczuk coming into the bedroom, which he shared with R.S., at night, after which H.S. could hear noises that "sounded like [Manczuk] was having sex with her." Manczuk later told H.S. that he had taken R.S.—who would have been 14 years old at the time—to Wyandotte County Park to sexually abuse her. R.S. told H.S. about the incident in the garage with Manczuk and T.M. after it happened.

H.S. also identified several photos of himself, including a photo of his penis, that he took at Manczuk's direction at the house in Leavenworth. H.S. was around 12 or 13 years old at the time. Manczuk told H.S. to take the pictures to show to a girl online "[who] was interested in [H.S.] and wanted to see pictures of [him]." After returning Manczuk's camera, H.S. saw Manczuk download the photos to his computer. Manczuk also asked H.S. to take more pictures and "encouraged" him to take some of R.S. too.

3

Manczuk testified in his own defense, admitting that he digitally penetrated R.S.'s vagina with his finger around Christmas of 2010. Manczuk claimed that R.S. had woken him up several times in the preceding three months by "bouncing on my lap" and then "sitting and rubbing" on him. Manczuk initially did not reciprocate and told her to stop but then began participating. Manczuk further admitted telling investigators during an interview that he digitally penetrated R.S.'s vagina with his finger again "close to almost springtime" after the first incident, and then sometime later that year "twisted a brush inside of her [vagina] that she had already put in." Manczuk also admitted committing these acts in an FBI interview.

In addition, Manczuk admitted R.S. orally stimulated his genitals during the loft incident she had described, but said it occurred separately from T.M. sexually abusing R.S. He also said it occurred in 2017 at the house in Leavenworth, meaning R.S. would have been around 17 years old and not "11 or 12" as she had testified. Manczuk denied taking any sexual photos of R.S. or H.S. but admitted he gave his camera to H.S. and directed him to take pictures of his face. Manczuk acknowledged taking back possession of his camera and transferring the photos to his computer but could not recall if he had seen the photos before trial.

The State also presented testimony from inmates who Manczuk had approached about getting rid of witnesses, as well as the testimony of the investigating officer. Andrew Belk was Manczuk's cellmate. They discussed the details of their cases, including that Manczuk received oral sex from R.S. Manczuk told Belk that if the witnesses—meaning R.S. and H.S.—"weren't there, that he would be able to get off." Belk was hesitant but eventually told Manczuk that he knew somebody who could help so that Manczuk would "stop talking about it." Belk wrote a letter to his "fake Uncle Keon" asking to "see what's up on these people" and listed R.S. and H.S. along with their places of employment. Belk discretely wrote a message on the back of the letter explaining that it was fake and that his cellmate was paying him to write it, then mailed it

to a family member. When Manczuk learned Belk would be going to prison, he had Belk write on the back of a piece of cardboard from a ramen noodle package the following information: the names of R.S. and H.S., their places of employment, and "the number to call and say something about Cavalier seats." Belk said the message was a code to let someone in Manczuk's family know the killing had occurred.

Carlos Campbell was in the same pod as Manczuk at the jail. Campbell overheard Manczuk speaking with other inmates about killing witnesses, including Campbell's cellmate. Campbell's cellmate gave Campbell the handwritten list of the people who Manczuk wanted killed, so Campbell told jail staff about the list.

Detective Tesh St. John interviewed Campbell, and then Manczuk. Campbell explained he overheard Manczuk telling his cellmate that he wanted witnesses killed and that he had the handwritten note back in his cell. After speaking with Alexander Vance, the FBI agent assigned to Manczuk's case, St. John interviewed multiple other inmates who were in the same pod as Manczuk over the next couple of days.

About a week later, St. John interviewed Manczuk, who said he had Belk make the list because he wanted to mail letters to R.S. and H.S. "to apologize that he wouldn't be able to work on their vehicles." Manczuk had Belk write the list because a hand injury made him unable to write. The list also contained the name of the victims' mother with the initials "DNK" written above. Manczuk told St. John the list included the places of employment "in case he got out of jail to remind him not to go to those places." Manczuk eventually admitted he had Belk write the letter to "[t]ry to convince them not to come to court." Manczuk denied wanting R.S. and H.S. to be killed or hurt.

Manczuk admitted speaking with Belk about his case and stating that he had a "good chance" of beating the charges but "[t]here'd be a better chance if they didn't show

up. But I knew that wouldn't happen." Manczuk reiterated that he did not want R.S. and H.S. to be killed and denied instructing anyone to do so.

The jury convicted Manczuk on all four counts.

Manczuk timely appeals his convictions.

ANALYSIS

Manczuk raises twelve total claims of trial error to support reversing his convictions, although we will group some together. In general, Manczuk's claims can be boiled down to these general arguments: (1) The State failed to prove that the child-sex offenses occurred within the applicable statute of limitations; (2) soliciting oneself to commit capital murder is legally impossible; (3) sexual exploitation of a child based on promoting a "'performance'" does not include electronic images; (4) aggravated criminal sodomy based on "'oral contact of the male genitalia'" does not include "'oral penetration'"; (5) statutory rape as charged is a general intent crime; (6) allowing the prosecutor to speak directly to a juror amounted to prosecutorial and judicial error; and (7) cumulative error.

SECTION 1: STATUTE OF LIMITATIONS

Manczuk contends his convictions for rape, aggravated criminal sodomy, and sexual exploitation of a child must be reversed based on the applicable statute of limitations. He bases this on the fact that he was charged in 2022 with crimes that occurred between 2010 and 2013.

## 1.1  *Jurisdiction*

As a starting point, Manczuk incorrectly contends that a claim based on the statute of limitations is jurisdictional. But the Kansas Supreme has long held that the statute of limitations is "an affirmative defense that can be waived and is not jurisdictional." *State v. Sitlington*, 291 Kan. 458, 463, 241 P.3d 1003 (2010) (citing *In re Johnson, Petitioner*, 117 Kan. 136, 230 P. 67 [1924]). Our Supreme Court's recent decision in *State v. Gleason*, 315 Kan. 222, 226, 505 P.3d 753 (2022), doubles down on this legal principle.

In *Gleason*, the court explained that a complaint charging a crime outside the applicable statute of limitations did not deprive the court of jurisdiction, reiterating its prior holdings that the statute of limitations is not a jurisdictional bar. 315 Kan. at 226-27. This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication of a departure from a previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). There is no such indication here.

## 1.2  *Preservation*

Manczuk filed a pretrial motion for dismissal of all three child-sex offenses based on the statute of limitations about a month before trial. At that time, the charges in the amended complaint alleged that all three of the offenses occurred "between 2011 and 2013." Consequently, Manczuk argued that the statute of limitations had run for each offense because under K.S.A. 2012 Supp. 21-5107, the applicable time to commence prosecution was five years following the victims' 18th birthdays. In other words, Manczuk believed the charges were untimely because "on the date the charges were filed, the alleged victims would have been over 23 and 24 years old."

At a hearing on Manczuk's motion, his defense counsel withdrew the request as to the rape and aggravated criminal sodomy charges after conceding the State's response

"has merit." But counsel continued to claim that the sexual exploitation of a child charge was time-barred.

After his conviction, Manczuk filed a posttrial motion for acquittal, asserting in part that he was renewing the motion to dismiss based on the statute of limitations. As support, Manczuk contended that K.S.A. 21-3106 (Torrence) controlled the statute of limitations because "[u]nlike other rules of criminal procedure," the statute of limitations is contained within the Kansas Criminal Code and therefore "is controlled by K.S.A[.] 21-5103(d), which limits the application of the code to crimes committed after July 1, 2011."

So Manczuk did not preserve his entire statute of limitations argument for appellate review. First, Manczuk voluntarily withdrew his original argument—that the 2012 statute of limitations controlled—at least as to the rape and aggravated criminal sodomy charges. Second, Manczuk raised a different argument—that the statute of limitations in effect in 2010 controlled the prosecution of the charges—in his posttrial motion for new trial and renewed motion for judgment of acquittal. Although he attempts to gloss over the different arguments, Manczuk did not "renew" his prior argument that the statute of limitations ran five years after the victims' 18th birthdays based on K.S.A. 2012 Supp. 21-5107 in his posttrial motion. Instead, he now claims that the statute of limitations ran five years *after the crimes were committed* based on K.S.A. 2010 Supp. 21-3106.

Manczuk cites no authority recognizing that a statute of limitations claim can be raised for the first time in a posttrial motion, either for new trial or judgment of acquittal. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (not supporting a point with pertinent authority is like failing to brief an issue and can be deemed abandoning the issue). Such a rule would also run counter to the idea that the statute of limitations is an affirmative defense that can be waived unless raised during trial. See *Gleason*, 315 Kan.

8

at 226; *Sitlington*, 291 Kan. at 463. For these reasons, we find Manczuk waived his original statute of limitations argument as to the rape and aggravated criminal sodomy charges because he voluntarily withdrew the argument before trial. Likewise, Manczuk waived his current argument as to the rape and aggravated criminal sodomy charges because he never raised it at trial.

1.3     *Sexual exploitation of a child*

Manczuk did properly preserve his current argument as to the sexual exploitation of a child charge. He contends that legislative extensions cannot be applied retroactively. Although this argument is contrary to binding Kansas Supreme Court precedent, he did preserve it for appellate review.

The question for this court is straightforward: Do the legislative extensions of the statute of limitations enacted after the 2011 recodification of the Kansas Criminal Code apply to crimes committed prior to the effective date of the recodification? As an issue of statutory interpretation, our review is unlimited. See *State v. Meza*, 38 Kan. App. 2d 245, 247, 165 P.3d 298 (2007).

To answer this question, Manczuk relies heavily on K.S.A. 21-5103(d), which states:

> "This code has no application to crimes committed prior to July 1, 2011. A crime is committed prior to the effective date of the code if any of the essential elements of the crime as then defined occurred before that date. Prosecutions for prior crimes shall be governed, prosecuted and punished under the laws existing at the time such crimes were committed."

According to Manczuk, the plain language of this statute means that any changes to the statute of limitations after the effective date do not apply to crimes committed

before that date. Thus, because the State charged him for conduct beginning prior to July 1, 2011, any prosecution would have to be commenced within five years of the date the crimes were allegedly committed. See K.S.A. 21-3106(4) (Torrence) (setting statute of limitations for most offenses at five years).

But as Manczuk acknowledges, the Kansas Supreme Court has held that legislative extensions to the statute of limitations can be applied retroactively if the statute of limitations has not already expired. See *State v. Spencer Gifts*, 304 Kan. 755, 769, 374 P.3d 680 (2016). The reason for this retroactivity stems from the fact that Kansas courts have long held that "[c]riminal statutes of limitation are remedial or procedural, *not substantive*[.]" (Emphasis added.) *State v. Nunn*, 244 Kan. 207, Syl. ¶ 10, 768 P.2d 268 (1989); see also *State v. Noah*, 246 Kan. 291, 294, 788 P.2d 257 (1990) (adhering to *Nunn*).

Manczuk's argument for applying the prior version of the statute of limitations relies on the fact that the statute of limitations is contained within the Kansas Criminal Code in chapter 21 instead of the Kansas Code of Criminal Procedure in chapter 22. The defendant in *Noah* made the same argument about the application of a prior criminal code recodification, but the Kansas Supreme Court soundly rejected it, stating that "[t]he actual scope and effect of the statute is controlling rather than its location in the statute book." 246 Kan. at 294. And adhering to *Nunn*, the court held the criminal statute of limitations is procedural and can be applied retroactively if the crimes charged have not been time barred before the legislative amendment. 246 Kan. at 294.

It is undisputed that the Legislature extended the statute of limitations multiple times before the statute of limitations ran in this case. The rape charge allegedly occurred "between December 1, 2010 and December 31, 2013," and the aggravated criminal sodomy and sexual exploitation of a child charges occurred "between January 1, 2011 and December 31, 2013." According to the statute of limitations in effect at the time the

10

crimes would have been committed, the State needed to commence prosecution on the rape charge by December 1, 2015, and on the other two charges by January 1, 2016. See K.S.A. 21-3106(4) (Torrence).

But in 2012, the Legislature extended the statute of limitations by requiring that time starts to run on a sexually violent offense committed against a minor victim after the victim's 18th birthday. See K.S.A. 2012 Supp. 21-5107(f). Because of this change, the statute of limitations would not run on the charges in this case until after R.S. turned 18, which would have been in 2017. The Legislature then extended the statute of limitations again, before the expiration of that time, by stating that charges for rape and aggravated criminal sodomy "may be commenced at any time," and by extending the time to 10 years for the sexual exploitation of a child charge. See K.S.A. 2013 Supp. 21-5107(a), (c)(2). So now the only bar was that the State needed to commence prosecution on the sexual exploitation of a child charge by 2027. Because the State filed the initial complaint in July 2022, the district court correctly concluded that the prosecution of the child-sex offenses in this case was not time barred.

1.4  *Sufficiency of evidence*

A sufficiency challenge involves reviewing the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). Manczuk argues that the State failed to present sufficient evidence that he committed the child-sex offenses within the applicable statute of limitations. The State contends Manczuk cannot reframe his statute of limitations claim as a sufficiency of the evidence challenge because the date of the offense is not a necessary element of any of the charged offenses.

11

But as Manczuk acknowledges in his brief, the Kansas Supreme Court has held repeatedly that the State need not prove the exact date an offense was committed because the date is typically not an element of the crime. *State v. Stafford*, 296 Kan. 25, 55, 290 P.3d 562 (2012). Even so, the court has held that "'where a defendant is not misled or prejudiced in making his or her defense by the allegation of when the crime occurred, a conviction may properly follow upon sufficient proof that the crime was committed at any time within the period of the statute of limitations.'" 296 Kan. at 55 (quoting *State v. Colston*, 290 Kan. 952, 963, 235 P.3d 1234 [2010]).

The Kansas Supreme Court recently addressed a similar sufficiency challenge based around the statute of limitations in *State v. Valdiviezo-Martinez*, 313 Kan. 614, 486 P.3d 1256 (2021). In that case, the defendant argued on appeal that there was insufficient evidence to show he committed identity theft on a specific date, which the Kansas Supreme Court explained was "essentially" a statute of limitations defense being raised for the first time on appeal. 313 Kan. at 623. The court pointed out that the defendant "concedes the date of offense is not an element of a crime," but proceeded to address the sufficiency challenge as framed because the State lodged no preservation or procedural objections. 313 Kan. at 624. In so doing, the court explicitly cautioned that the decision would "leave for another day the job of reconciling the statute of limitations and the affirmative defense cases and of determining whether a sufficiency argument can serve as a vehicle for raising the defense." 313 Kan. at 624. We too leave this discussion for another day because Manczuk's sufficiency claim clearly fails on the merits.

Based on the evidence presented, Manczuk committed the acts constituting rape in December 2010 because he admitted in his testimony that he digitally penetrated R.S.'s vagina with his finger around Christmas that year, then committed similar acts a few months later. Manczuk further committed the acts constituting aggravated criminal sodomy in 2011 because R.S. testified that Manczuk forced her to orally manipulate his penis in the loft when she was only 11 or 12 years old. Although Manczuk admitted this

encounter occurred after the initial interaction, he gave a different timeline of events and claimed it happened when R.S. was 17 years old. But we view the evidence in the light most favorable to the State, so there was sufficient evidence that the acts constituting aggravated criminal sodomy occurred after the initial interaction as admitted by Manczuk, meaning sometime in 2011. Finally, the evidence also shows the acts constituting sexual exploitation of a child occurred when R.S. was around 12 or 13 years old because H.S. testified to taking nude pictures of himself and R.S. at the direction of Manczuk. Since R.S. was born in 1999, these pictures would have been taken in 2011 or 2012.

Manczuk asserts there was not sufficient evidence to prove that he committed the child-sex offenses alleged in the complaint within five years of the initial complaint, but he is mistaken about the applicable statute of limitations period. As explained in Section 1, legislative extensions to the statute of limitations can be applied retroactively to crimes as long as the statute of limitations has not already expired. Although the dates differ slightly, the applicable statute of limitations based on the evidence for each offense would originally have expired between December 2015 and sometime in 2017, but due to legislative amendments in 2012 and 2013, the time bar was extended before that expiration. Accordingly, we find there was sufficient evidence to show that Manczuk committed the alleged offenses within the applicable statute of limitations.

SECTION 2:  SOLICITATION OF CAPITAL MURDER

Manczuk next contends his solicitation of capital murder conviction must be reversed based on the following claims:  (1) sufficiency of the evidence; (2) instructional error; and (3) legal impossibility. While these are separate claims with different analyses, they are all based on the same underlying argument that the district court erroneously instructed the jury to determine whether Manczuk was guilty of soliciting himself to enter

13

a contract to commit capital murder. But while the wording could be confusing, Manczuk misreads the jury instruction and has not shown he is entitled to relief on these points.

2.1    *Sufficiency of the evidence*

As already noted, when the sufficiency of the evidence is challenged, we review the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *Aguirre*, 313 Kan. at 209.

Manczuk contends insufficient evidence supported the conviction because he could not logically or legally solicit himself to enter a contract to kill R.S. and H.S.

The Kansas Supreme Court has informed us that sufficiency challenges are measured against the jury instructions when the elements in the jury instructions are narrower than those identified in the charging document. See *State v. Couch*, 317 Kan. 566, 581-84, 533 P.3d 630 (2023), *abrogated on other grounds by State v. Garcia-Martinez*, 318 Kan. 681, 546 P.3d 750 (2024). But see *State v. Fitzgerald*, 308 Kan. 659, 665-66, 423 P.3d 497 (2018) (measuring sufficiency challenge against elements listed in charging document where jury was instructed on a different means of committing the charged offense).

The State charged Manczuk with solicitation of capital murder under K.S.A. 21-5303 and K.S.A. 21-5401(a)(2). Solicitation is defined as "commanding, encouraging or requesting another person to commit a felony, attempt to commit a felony or aid and abet in the commission or attempted commission of a felony for the purpose of promoting or facilitating the felony." K.S.A. 21-5303(a). Capital murder under subsection (a)(2) is defined as "intentional and premeditated killing of any person pursuant to a contract or

14

agreement to kill such person or being a party to the contract or agreement pursuant to which such person is killed." K.S.A. 21-5401. The complaint reflects these elements by alleging, as follows:

"That between October 1st and November 30th, 2022, in Leavenworth County, Kansas, Steven Manczuk, then and there being present did unlawfully, feloniously, intentionally and with premeditation command, encourage, or request another person to commit a felony; to wit, Capital Murder, pursuant to a contract or agreement, and persons solicited to be killed are H.S. and R.S."

In instruction No. 11, the district court instructed the jury as follows:

"The defendant is charged with Solicitation to Commit Capital Murder, a felony. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant intentionally and with premeditation commanded, encouraged or requested a person to commit or attempt to commit capital murder.

"2. This act occurred between the 1st day of October, 2022 and the 30th day of November, 2022 in Leavenworth County, Kansas.

"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation require[s] more than the instantaneous, intentional act of taking another's life.

"The definition of capital murder, the felony charged to be the subject of the solicitation, is as follows:

"1. The defendant intentionally killed R.S. and H.S.

"2. The killing was done with premeditation.

"3. The killing was done pursuant to a contract or agreement to kill.

"4. The defendant was 18 or more years of age at the time the killing occurred.

"5. This act occurred between the 1st day of October and the 30th day of November, 2022.

15

"The state must prove the defendant committed the killing intentionally and with premeditation. A defendant acts intentionally when it is the defendant's conscious objective or desire to do the act complained about by the state."

Contrary to Manczuk's position, the complaint clearly alleges Manczuk solicited *another person* to commit capital murder "pursuant to a contract or agreement," mirroring identical language in K.S.A. 21-5401(a)(2). That same language is then included in the jury instruction under the definition of capital murder. Manczuk's contention that the district court instructed the jury to find him guilty of soliciting himself to enter an agreement to kill R.S. and H.S. is not supported by the plain language of the instructions. Although we agree that it is awkward for the definition of capital murder to refer to the "defendant intentionally killed R.S. and H.S.," the definition of the target crime—i.e., capital murder pursuant to a contract or agreement—is subordinate to the elements of the solicitation offense and clearly refers to a different person than Manczuk under the circumstances. To be guilty of the charged offense, Manczuk only needed to communicate—with the required mens rea—a solicitation to another person to commit the target crime. See *State v. DePriest*, 258 Kan. 596, 604, 907 P.2d 868 (1995) ("The crime is complete when the person communicates the solicitation to another with the requisite mens rea. No act in furtherance of the target crime needs to be performed by either person."). These elements are accurately described in the two numbered paragraphs at the beginning of the instruction as "claims [that] must be proved."

And as Manczuk concedes, "all the trial evidence tends to prove that Manczuk was looking for other people to agree to kill H.S. and R.S. for him." Campbell, an inmate in the same jail pod as Manczuk, testified that he overheard Manczuk telling multiple other inmates he wanted the witnesses gone. Belk, who was Manczuk's cellmate, said Manczuk spoke candidly with him about wanting witnesses killed, and Belk agreed to write a letter to a fake family member to further this request. A rational fact-finder viewing this

16

evidence in the light most favorable to the State would find Manczuk guilty of soliciting capital murder.

2.2    *The jury instruction*

Manczuk also contests his solicitation of capital murder conviction by challenging the jury instruction. In short, Manczuk contends the instruction was legally infirm because it presented a theory of guilt that deviated from the charging document.

But Manczuk invited the error that forms the basis of his instructional error claim. The invited-error doctrine precludes a party who has led the district court into error from complaining of that error on appeal. *State v. Roberts*, 314 Kan. 835, 846, 503 P.3d 227 (2022). Whether invited error applies is a question of law subject to unlimited review. *State v. Douglas*, 313 Kan. 704, 706, 490 P.3d 34 (2021).

In the context of jury instruction challenges, mere failure to object to a proposed instruction does not automatically trigger invited error. See *State v. Fleming*, 308 Kan. 689, 701-02, 423 P.3d 506 (2018). Nor does it automatically apply every time a party requests an instruction and then claims error on appeal. 308 Kan. at 689. Yet the Kansas Supreme Court has applied invited error when the party proposing an instruction could have ascertained the instructional error at the time. 308 Kan. at 703; *State v. Brown*, 306 Kan. 1145, 1166, 401 P.3d 611 (2017) (defendant invited error by proposing pretrial instruction that defined offense more broadly than it had been charged by the State).

Here, the district court gave a jury instruction on the solicitation of capital murder charge that was essentially identical to the version proposed by Manczuk.

Manczuk proposed an instruction that closely mirrored the language from PIK Crim. 4th 53.090 (2017 Supp.), but that also included the definition of capital murder that incorporated the charged offense and PIK Crim. 4th 54.020 (2018 Supp.):

"The defendant is charged with solicitation to commit capital murder, a felony. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.   The defendant intentionally and with premeditation (commanded) (encouraged) (requested) a person (to commit) (attempt to commit) capital murder, a felony

"2.   This act occurred between the 1st day of October and the 30th day of November, 2022 in Leavenworth County, Kansas.

"The state must prove the defendant committed the crime intentionally.

"A defendant acts intentionally when it is his conscious objective or desire to do the act complained about by the State.

"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life.

"The definition of capital murder, the felony charged to be the subject of the solicitation, is as follows:

"1.      The defendant intentionally killed R.S. and H.S.

"2.      The killing was done with premeditation[.]

"3.      The killing was done pursuant to a cont[r]act or agreement to kill.

"4.      The defendant was 18 or more years of age at the time the killing occurred[.]

18

"5.     This act occurred between the 1st day of October and the 30th day of November, 2022, in Leavenworth County, Kansas[.]

"The state must prove the defendant committed the killing intentionally and with premeditation.

"A defendant acts intentionally when it is his conscious objective or desire to do the act complained about by the State.

"Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life."

The only material difference between Manczuk's proposed instruction and the final jury instruction—to which he did not object—is that the final instruction omits the definition of "intentionally" following the elements of solicitation and then omits the definition of "premeditation" following the definition of capital murder. These omissions do not form the basis for Manczuk's claim of error. Instead he contends the district court erred by not adequately distinguishing him as "the defendant" charged with solicitation from "the defendant" being described in the capital murder definition. But since Manczuk proposed the language in the instruction, any complaint of error is invited error and may not be considered by this court.

## 2.3   *A legal impossibility*

Finally, Manczuk argues his solicitation of capital murder conviction must be reversed because it was based on a logical or legal impossibility. Manczuk is also not entitled to relief on this point.

Manczuk acknowledges he is raising this claim for the first time on appeal but contends this court can reach the merits because it involves a fundamental right. See *State*

19

*v. Bodine*, 313 Kan. 378, 398, 486 P.3d 551 (2021). The Kansas Supreme Court in *Bodine* addressed a similar claim for the first time on appeal under the fundamental rights exception based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution which requires the State to prove each element of a crime beyond a reasonable doubt. See 313 Kan. at 398 (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 [1970]).

Whether Manczuk's conviction for solicitation of capital murder is legally impossible raises a question of law subject to unlimited appellate review. See *Bodine*, 313 Kan. at 399 (citing *State v. Gutierrez*, 285 Kan. 332, 339, 172 P.3d 18 [2007]). Resolving this issue also involves statutory interpretation, which also presents a question of law subject to unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

As Manczuk notes, the Kansas Supreme Court recognized in *Gutierrez* "that it is logically impossible to attempt to commit an unintentional act." 285 Kan. at 343-44. Manczuk does not argue that solicitation of capital murder would require proof that he intentionally solicited an unintentional act. Instead, he argues more generally that logically impossible acts cannot form the basis for a crime. Manczuk is correct that the plain language of the solicitation statute does not allow a defendant to solicit himself to commit capital murder because the statute refers to "another person." K.S.A. 21-5303(a). But as explained above, the State did not charge Manczuk with soliciting himself. The complaint and jury instruction presented the same theory of guilt, which is that Manczuk communicated a solicitation to another person to commit capital murder. As a result, the jury did not convict Manczuk of a nonexistent crime because solicitation of capital murder as charged fit the statutory definition of the offense. See *Depriest*, 258 Kan. at 604.

We affirm Manczuk's conviction for solicitation of capital murder.

20

Manczuk similarly challenges his sexual exploitation of a child conviction by raising a sufficiency of the evidence claim and an instructional error claim. Both claims are based on an argument that the applicable statute for which he was convicted does not include electronic images as a means of committing the charged offense. Manczuk does not persuasively show he is entitled to reversal of this conviction.

## 3.1 *Sufficiency of the evidence*

Again, the standard of review for reviewing a sufficiency challenge involves viewing the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. This court does not reweigh evidence, resolve conflicting evidence, or assess witness credibility. *Aguirre*, 313 Kan. at 209.

As before, resolving this issue involves statutory interpretation, which presents a question of law subject to unlimited review. See *Alvarez*, 309 Kan. at 205. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. 315 Kan. at 698.

Unlike the previous sufficiency claim, Manczuk does not contend the jury instruction deviated from the complaint, so this court measures the sufficiency against the crime as charged in the complaint. *Fitzgerald*, 308 Kan. at 665-66.

The State charged Manczuk with sexual exploitation of a child by alleging, as follows:

"That between January 1, 2011 and December 31, 2013, in Leavenworth County, Kansas, Steven M Manczuk, then and there being present did unlawfully and feloniously employ, use, persuade, induce, entice or coerce R.S. (YOB 1999) and H.S. (YOB 1998) a child under 14 years of age, to engage in sexually explicit conduct with the intent to promote a performance, and the defendant was 18 years of age or older."

Although the complaint references the current version of the sexual exploitation of a child statute—K.S.A. 21-5510(a)(1)—the dates listed in the complaint mean that K.S.A. 2010 Supp. 21-3516(a)(5) is the applicable version of the statute. That statute defines the offense as "employing, using, persuading, inducing, enticing or coercing a child under 14 years of age to engage in sexually explicit conduct for the purpose of promoting any performance." K.S.A. 2010 Supp. 21-3516(a)(5). Manczuk concedes all but one of the elements of the charged offense were met here:  that the electronic images of R.S. and H.S. did not constitute a "'performance'" because that term does not appear in the plain language of the statute. Put another way, Manczuk contends the crime of sexual exploitation of a child does not cover his conduct because the evidence shows he only intended to promote electronic images of R.S. and H.S. engaging in sexually explicit conduct.

As Manczuk notes, both versions of the statute use the same definition of "'performance,'" defining that term as:

"any film, photograph, negative, slide, book, magazine or other printed or visual medium, any audio tape recording or any photocopy, video tape, video laser disk, computer hardware, software, floppy disk or any other computer related equipment or computer generated image that contains or incorporates in any manner any film, photograph, negative, photocopy, video tape or video laser disk or any play or other live presentation."

Compare K.S.A. 2010 Supp. 21-3516(b)(3), with K.S.A. 21-5510(d)(3).

As support, Manczuk relies on this court's decision in *State v. Donham*, 29 Kan. App. 2d 78, 83-84, 24 P.3d 750 (2001), which held that 90 counts of sexual exploitation of a child were multiplicitous because the plain language of the statute only allowed prosecution based on the possession of each medium—in that case, the 18 floppy disks on which the sexually explicit images were found instead of each individual electronic image. In reaching that conclusion, the panel made the following legal determinations:

"First, the images retrieved from the floppy disks were not photographs because they were not printed onto paper through a photosynthesis process. Second, the sexual exploitation of a child statute does not list possession of electronic images as a means of violating the statute. Third, the images do not constitute computer hardware because the images are not computer equipment or components. In addition, the State did not present evidence at Donham's trial showing that the images were retrieved from computer hardware. Fourth, the images do not constitute software because the images are not programs or procedures associated with a computer system. Fifth, the images do not constitute computer-generated images. The term 'computer-generated image' as used in the sexual exploitation of a child statute should be interpreted as encompassing any sexually explicit image of a child that is graphically made or created by using a computer. However, there was no evidence presented at Donham's trial indicating that any of the images retrieved from the floppy disks were graphically made or created by using a computer. Moreover, the evidence presented by the State showed scenes of real children." 29 Kan. App. 2d at 82-83.

Manczuk asserts all but the first determination "control the outcome of this issue," but we disagree. See *Fleming*, 308 Kan. at 706 (Kansas Court of Appeals panels have the right to disagree with a previous panel.). There are at least two reasons why *Donham* is inapplicable here, including: (1) The panel was reviewing a different provision of the sexual exploitation of a child statute, which is also now outdated; and (2) *Donham* involved a multiplicity claim, not the sufficiency of the evidence.

23

But more to the point, Manczuk's attempt to rely on the legal determinations made in *Donham* is not persuasive. Although Manczuk does not specifically mention it, the panel's first determination that "images retrieved from the floppy disks were not photographs because they were not printed onto paper through a photosynthesis process" relies on too narrow of a definition of "photograph." See *Donham*, 29 Kan. App. 2d at 82. But a digital camera like the one used in this case nonetheless creates a photograph despite using digital technology. See Webster's New World College Dictionary 1099 (5th ed. 2018) ("photograph" defined as "an image or picture made by photography" and "photography" defined as "the art or process of capturing images, either on light-sensitive film or electronically in digital form, from which viewable pictures can be produced"). Recognizing this common meaning further demonstrates why it is immaterial that the statute does not mention "electronic images," as the *Donham* panel noted. 29 Kan. App. 2d at 82. A digital photograph is still a photograph even if it has not been reduced to a physical form.

Prior to *Donham*, the Kansas Supreme Court rejected an argument by a defendant convicted of sexual exploitation of a child that the definition of "film" did not include motion pictures or undeveloped still photographic film of children engaging in sexually explicit conduct. See *State v. Peltier*, 249 Kan. 415, 429-30, 819 P.2d 628 (1991) ("[I]t is the recording of the images initially by using a child to portray sexually explicit conduct that the legislature sought to outlaw."). While *Peltier* also involved a possession charge, it demonstrates that the *conduct* prohibited by a statute is a relevant consideration when interpreting the legislative intent as part of a sufficiency claim. Distinguishing the types of conduct prohibited by the sexual exploitation of a child statute further explains why the convictions in *Donham* were found to be multiplicitous. At the time, sexual exploitation of a child based on possessing child pornography was tied to the particular medium, but the statute has since been amended so that it now prohibits possessing "any visual depiction." K.S.A. 21-5510(a)(2).

24

With that in mind, we turn back to the conduct prohibited by the offense for which Manczuk was charged. The applicable version of the sexual exploitation of a child statute contains six distinct means of committing the offense. See K.S.A. 2010 Supp. 21-3516(a)(1)-(6). Here, the State charged Manczuk specifically under the provision prohibiting "*employing, using, persuading, inducing, enticing or coercing* a child under 14 years of age to engage in sexually explicit conduct for the purpose of promoting any performance." (Emphasis added.) K.S.A. 2010 Supp. 21-3516(a)(5). He was not charged with "possessing any visual depiction" or "promoting any performance" of similar sexually explicit conduct. See K.S.A. 2010 Supp. 21-3516(a)(2), (4). More simply put, Manczuk was charged with and convicted of directing R.S. and H.S. to create child pornography for him, but not for possessing or distributing the resulting electronic images. Other than claiming that "electronic images" created by a digital camera cannot be considered photographs, Manczuk makes no attempt to suggest that the evidence says his conduct did not otherwise meet the remaining elements. Accordingly, we find there was sufficient evidence to support his sexual exploitation of a child conviction.

3.2    *Instructional error*

Like his previous instructional error claim, Manczuk concedes that he did not object to the sexual exploitation of a child instruction. Thus, this court reviews for clear error at the final step of the traditional jury instruction error analysis, and Manczuk bears the burden of showing such clear error. See K.S.A. 22-3414(3); *State v. Martinez*, 317 Kan. 151, 162, 527 P.3d 531 (2023).

Again, we must reject Manczuk's instructional error claim because he invited the error that forms the basis of his argument. See *Roberts*, 314 Kan. at 846.

Manczuk argues the district court wrongly instructed the jury on the definition of "[v]isual depiction," but a review of the record shows that only Manczuk proposed an

25

instruction that included the same definition. The State's proposed instruction merely defined "'[s]exually explicit conduct'" and "'[p]romoting.'" The final instruction given by the district court adopted Manczuk's proposed instruction, and he did not object to the inclusion of the "[v]isual depiction" definition at that time. Since Manczuk proposed the language in the instruction, any complaint of error is invited error.

SECTION 4:  AGGRAVATED CRIMINAL SODOMY

Manczuk next challenges his aggravated criminal sodomy conviction, raising two claims that center on the State alleging in the complaint that he engaged in "oral copulation with R.S." First, Manczuk asserts the district court lacked jurisdiction over this charge because the State charged him with a nonexistent crime, as "'oral copulation'" is not equivalent to "'oral contact of the male genitalia.'" Then, Manczuk argues the district court clearly erred in instructing the jury by broadening the charged crime to equate these terms. Manczuk is not entitled to relief on these points.

4.1    *Jurisdiction*

Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022). Subject matter jurisdiction may be raised at any time, including for the first time on appeal. *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021).

As Manczuk notes, the Kansas Constitution is the source of a court's subject matter jurisdiction. *State v. Dunn*, 304 Kan. 773, 811, 375 P.3d 332 (2016). Yet despite acknowledging this holding, Manczuk nonetheless proceeds to argue that the district court here lacked jurisdiction because of a defective complaint that charged a nonexistent Kansas crime. As *Dunn* clarified, deficiencies in a charging document—such as failing to charge a Kansas crime—do not deprive a court of subject matter jurisdiction but impair

26

the proper invocation of that jurisdiction. 304 Kan. at 812. "The problem is not a substantive absence of jurisdiction; it is a procedural failure to demonstrate its existence." 304 Kan. at 812; see also *State v. Jordan*, 317 Kan. 628, 642, 537 P.3d 443 (2023) (citing *Dunn*).

As *Dunn* also recognized—and the State points out—the charging document need not include every essential element of a charged offense. It is sufficient if the complaint alleges facts which, if proven beyond a reasonable doubt, show the defendant has committed a crime in Kansas. 304 Kan. at 811.

Here, the State charged Manczuk with aggravated criminal sodomy under K.S.A. 21-5504(b)(1). Although the complaint references the current version of the offense— which the parties also cite in their briefs—the dates listed in the complaint should reflect that an earlier version of the statute controls here. This difference does not impact on the analysis, as the relevant statutory elements of the versions of the offense are not materially different. Thus, the relevant statute is K.S.A. 2010 Supp. 21-3506(a)(1), which defines aggravated criminal sodomy as "[s]odomy with a child who is under 14 years of age." Under K.S.A. 21-3501(2) (Torrence), "'Sodomy' means oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; anal penetration, however slight, of a male or female by any body part or object; or oral or anal copulation or sexual intercourse between a person and an animal."

According to Manczuk, the State failed to charge an existing crime because the complaint specifically alleged that Manczuk "unlawfully and feloniously engage[d] in *oral copulation* with R.S." (Emphasis added.) He asserts that the plain language of the statute treats "oral contact" and "oral penetration" as mutually exclusive terms when referring to female genitalia, meaning "oral contact of the male genitalia" necessarily excludes oral penetration. And because "oral copulation" is synonymous with "the penetration by the male sex organ into the mouth." *State v. Hemby*, 264 Kan. 542, 549,

957 P.2d 428 (1998) (citing *State v. Switzer*, 244 Kan. 449, 456, 769 P.2d 645 [1989]). Manczuk contends "oral contact of the male genitalia" necessarily excludes "oral copulation." But he is mistaken.

As he concedes, the Kansas Supreme Court in *State v. Britt*, 295 Kan. 1018, 1025, 287 P.3d 905 (2012), rejected the idea that "oral contact" and "oral penetration" create alternative means of committing sodomy. Instead, "'oral contact or oral penetration of the female genitalia or oral contact with male genitalia'" collectively provided "a full description of one means of committing sodomy—oral contact of genitalia." *Stafford*, 296 Kan. at 52 (citing *Britt*). While Manczuk contends *Britt* was wrongly decided based on the plain language of the statute, the Kansas Supreme Court has reaffirmed this holding multiple times. See *State v. Dern*, 303 Kan. 384, 396, 362 P.3d 566 (2015) (referring to "oral contact of genitalia" as one general means of committing sodomy); *Stafford*, 296 Kan. at 52; *State v. Wells*, 296 Kan. 65, 85, 290 P.3d 590 (2012) ("The phrase 'oral contact or oral penetration of the female genitalia or oral contact of the male genitalia' does not establish two alternative means of committing sodomy. Instead, the phrase only establishes one means of committing sodomy—oral contact of genitalia.") In short, this court must adhere to binding precedent, which interprets the definition of sodomy as broadly prohibiting "oral contact of genitalia" without distinction between female and male genitalia as one of three general means of committing sodomy.

So, the question turns to whether "oral contact of genitalia" includes "oral copulation." The Kansas Supreme Court previously held that "'[o]ral copulation' is the penetration by the male sex organ into the mouth." *Hemby*, 264 Kan. at 549 (citing *Switzer*, 244 Kan. at 456). But these cases were interpreting an earlier version of the statute that defined sodomy in part as "oral or anal copulation, including oral-genital stimulation between the tongue of a male and the genital area of a female." K.S.A. 1990 Supp. 21-3501(2). The Legislature amended the statute in 1991, long before these crimes

28

were committed, adopting the current definition of sodomy that was interpreted in *Wells*. K.S.A. 1991 Supp. 21-3501(2).

That said, looking further at these decisions demonstrates precisely why Manczuk's argument that aggravated criminal sodomy by "oral copulation" excludes forcibly placing the male sex organ into a victim's mouth is not persuasive. Even under the earliest definition of sodomy cited by Manczuk, the Kansas Supreme Court recognized that oral copulation includes "nonconsensual penetration by the male sex organ into a mouth." *Switzer*, 244 Kan. at 456. While the current statute no longer refers to "oral copulation," caselaw nonetheless recognizes that any "oral contact of genitalia" between a defendant and a minor victim suffices to establish aggravated criminal sodomy. Manczuk therefore fails to show that the State charged him with a nonexistent Kansas crime by alleging that he committed aggravated criminal sodomy by engaging in oral copulation with R.S. As a result, the State properly demonstrated the district court's jurisdiction.

## 4.2  *Instructional Error*

Again, Manczuk concedes that he did not object to the aggravated criminal sodomy instruction, so this court reviews for clear error at the final step of the traditional jury instruction error analysis and Manczuk bears the burden of showing such clear error. See K.S.A. 22-3414(3); *Martinez*, 317 Kan. at 162.

And like his other instructional error claims, we reject Manczuk's claim because he invited the error that forms the basis of his argument. See *Roberts*, 314 Kan. at 846.

Manczuk argues the district court improperly broadened the charged offense by defining "'sodomy'" as including "'oral contact of the male genitalia.'" A review of the record shows that the State proposed an instruction on this offense that included the entire

statutory definition of sodomy, including the other means not alleged in the complaint. Manczuk, however, proposed an instruction that narrowed the definition of sodomy to only include the first definition, but that also included the "oral contact of the male genitalia" language he now challenges as improper. Although both parties modeled their proposed instruction based on the standard pattern instruction, only Manczuk took affirmative steps to "[i]nsert only the applicable portions of the definition of 'sodomy,'" as recommended. PIK Crim. 4th 55.060 (2021 Supp.); see also PIK Crim. 4th 55.020 (2012 Supp.) (defining sodomy).

Manczuk's counsel requested to omit the irrelevant sections of the sodomy definition because it would produce a "clearer instruction," and affirmatively approved the language of the final instruction. Since Manczuk proposed the language in the instruction and his counsel affirmatively approved it on the record, any complaint of error is invited error, and we may not consider it.

SECTION 5: RAPE—INSTRUCTIONAL ERROR

Manczuk next challenges his rape conviction, arguing that the jury instruction for this offense erroneously omitted an intent element. Manczuk did not object to this instruction below, so this court reviews for clear error at the final step of the traditional jury instruction error analysis and Manczuk bears the burden of showing such clear error. See K.S.A. 22-3414(3); *Martinez,* 317 Kan. at 162.

Again, this court first reviews for instructional error by determining whether a particular instruction was legally and factually appropriate. *State v. Holley*, 313 Kan. 249, 254, 485 P.3d 614 (2021). Manczuk does not argue the instruction was factually inappropriate, only that it was legally inappropriate.

30

In instruction No. 8, the district court instructed as follows:

"The defendant is charged with Rape. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
"1. The defendant engaged in sexual intercourse with R.S.
"2. At the time the sexual intercourse occurred, R.S. was less than 14 years old. The state need not prove the defendant knew the child's age.
"3. At the time the sexual intercourse occurred the defendant was 18 or more years old.
"4. The act occurred between December l, 2010 and December 31, 2013 in Leavenworth County, Kansas.

"Sexual intercourse means any penetration of the female sex organ by a finger, male sex organ, or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse."

The State charged Manczuk with rape of R.S. under K.S.A. 21-5503(a)(3). Yet, as Manczuk correctly points out, the State alleged Manczuk committed this offense "between December 1, 2010 and December 31, 2013," meaning a prior version of the offense—K.S.A. 2010 Supp. 21-3502(a)(2)—governs. That statute defines the offense of rape as "sexual intercourse with a child who is under 14 years of age." K.S.A. 2010 Supp. 21-3502(a)(2).

Because the pre-recodification version of the offense applies to his conviction, Manczuk now argues the district court also needed to instruct that he committed the rape "intentionally" because all crimes before the 2011 recodification required intent as an essential element. K.S.A. 21-3201(a) (Torrence) ("Except as otherwise provided, a criminal intent is an essential element of every crime defined by this code.").

31

But this issue was litigated frequently before the 2011 recodification and the resulting outcome is well-settled. In *State v. Plunkett*, 261 Kan. 1024, 1030-31, 934 P.2d 113 (1997), the Kansas Supreme Court indeed recognized that while "general criminal intent is an element of rape," omitting the word "intentionally" does not result in error because "[t]he word 'intentionally' is not in the rape statute and, therefore, is properly not included in the pattern jury instruction." In other words, *Plunkett* supports the conclusion that it was legally appropriate to omit "intentionally" from the rape instruction. This court is bound to follow Kansas Supreme Court precedent absent an indication of a departure. *Patton*, 315 Kan. at 16. Manczuk provides no contrary authority indicating a departure.

A corollary argument raised by the defendant in *Plunkett* was that the district court erred by failing to give a general criminal intent instruction. The Kansas Supreme Court rejected this argument, finding a general criminal intent instruction need only be given when the defendant's state of mind is at issue. Plunkett's defense was the acts were consensual. So he conceded that he purposefully engaged in sex with the underage victim. So failing to give an instruction regarding Plunkett's general intention was not factually appropriate and there could be no error in failing to give it. 261 Kan. at 1031-32; see *State v. Isley*, 262 Kan. 281, 292-93, 936 P.2d 275 (1997) (citing *Plunkett* and finding no error in omitting definition of "intentionally" from aggravated indecent liberties instruction because the statute does not require proof that the defendant intended to have nonconsensual intercourse only that he had sexual intercourse without the victim's consent when the victim was overcome by force or fear). Here, Manczuk conceded that he was guilty of rape through his testimony and the fact that he offered no defense to that charge. Accordingly, like Plunkett and Isley, Manczuk fails to demonstrate that the rape instruction given here was factually infirm.

Because Manczuk does not establish instructional error occurred, this court need not discuss Manczuk's remaining arguments about whether omitting an intent element requires reversal.

We note that after this case was submitted for decision, Manczuk filed a motion for supplemental briefing based on the Supreme Court's recent decision in *State v. Gleason*, No. 125,156, 320 Kan. ___, 2025 WL 1830091 (2025). In *Gleason*, the Supreme Court held that when the court fails to advise the jury on an essential element of the offense, we are to assume prejudice. However, the State may rebut the presumption by showing that defendant suffered no prejudice. 2025 WL 1830091, at *12-13. Manczuk argues that the court omitted the element "intentionally," so prejudice is presumed and the State did not argue it was *not* prejudicial. In other words, he contends that *Gleason* requires we reverse his rape conviction. But as we have already outlined, our Supreme Court has held that "intentionally" is not an element of rape. *Plunkett*, 261 Kan. at 1030-31. Therefore, failure to include it is not error. Accordingly, we have denied Manczuk's request for supplemental briefing based on *Gleason*.

SECTION 6: JUDICIAL MISCONDUCT AND PROSECUTORIAL ERROR

For his penultimate issue, Manczuk argues he did not receive a fair trial because the district court allowed the prosecutor and an unknown juror to speak to each other during the State's closing arguments. Without much discussion, Manczuk asserts two errors occurred: (1) prosecutorial error for speaking to an impaneled juror before the juror had been discharged from their duties under K.S.A. 22-3440(b); and (2) "judicial error" for failing to "stop the unknown juror from speaking after the initial question, allowing multiple more questions and comments before stepping in."

The relevant exchange occurred during closing argument when the prosecutor was playing a video of one of Manczuk's interviews back for the jury, in which Manczuk admitted to sexually abusing R.S. with a hairbrush. The prosecutor was talking over the video. In other words, he was commenting in live time regarding what was taking place during the interview. The full exchange is as follows:

"MR. LYON: I grabbed it and twisted it. He's going to be a little more helpful.

"UNKNOWN JUROR: Excuse me. I didn't hear your first comment during that. You said something. I didn't catch what you said.

"No, no, no. Not that. The first time you said something.

"MR. LYON: The grabbed it and twisted it?

"UNKNOWN JUROR: No. Before that you said something earlier.

"MR. LYON: I'm not sure I can talk to a juror, to be honest with you. So, Your Honor?

"UNKNOWN JUROR: I didn't hear what he said is all.

"THE COURT: Okay. I'm sorry. But we can't have questioning."

"MR. LYON: Thank you, Judge.

"UNKNOWN JUROR: Okay.

"THE COURT: You need to proceed.

"UNKNOWN JUROR: Too many things going at the same time.

"MR. LYON: I'll mind my voice over the film, Judge. I apologize. It's a little distracting."

We fail to see how this exchange violated Manczuk's right to a fair trial.

## 6.1    *Judicial misconduct*

First, beginning with voir dire, the parties impressed upon the jury the importance of considering all the evidence and encouraged them to speak up if they could not hear. In fact, at one time a juror spoke up about not hearing the prosecutor in voir dire. Thereafter, defense counsel explained to the jurors that his voice tends to trail off and become hard to hear and he tends to speak fast, so he encouraged the jurors to let him know if they could not hear him or if he was talking too fast.

During trial, witnesses were routinely told the importance of speaking loudly enough that the court reporter, the jury, or "everyone" could hear. Attorneys would alert witnesses when they were having trouble hearing. On one occasion, during witness

34

testimony, the court advised the parties that the "jury is signaling they cannot hear you. So if you would please speak louder."

So the jury was repeatedly reminded how important it was for them to hear everything and were encouraged to let someone know if they did not hear something. That is a good and routine trial practice for the parties and the judge. It is an essential part of a trial that the jury hear and see the proceedings. See *State v. Hayes*, 270 Kan. 535, 540, 17 P.3d 317 (2001) (reversing a conviction when it was shown that one of the jurors could not hear the defendant's testimony).

Here, a juror commented verbally, instead of nonverbally, that they could not hear part of what the prosecutor said, and the juror wanted it repeated. The prosecutor was a bit confused about what the juror missed but immediately realized he should not be talking directly to the juror. After the judge indicated that the conversation should stop, the prosecutor apologized to the judge and relayed that he would "mind my voice over the film."

Just like judges constantly advise attorneys and witnesses they cannot talk over each other because the judge cannot hear or the court reporter cannot record more than one conversation at a time, the prosecutor was trying to talk over the video. The court advised the juror that he or she could not really interrupt with questions—even though he had allowed them to nonverbally indicate their inability to hear during witness testimony. Events happen quickly in trial, and sometimes it takes just a moment to figure out what the issue is. Trial judges have broad discretion in controlling trial proceedings, including to reasonably control the duration and scope of closing argument. See *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). Here, the judge acted quickly, and the discussion ended. Moreover, the judge informed the jury in its instructions that statements of counsel are not evidence. Manczuk fails to provide any

caselaw to support a finding that the judge's actions here were an abuse of discretion or the equivalent of judicial misconduct.

6.2     *Prosecutorial error*

Second, Manczuk turns solely to K.S.A. 22-3440(b) to establish prosecutorial error under these facts. The statute provides that "following the discharge of the jury in a criminal action, the defendant, or the defendant's attorney or representative, or the prosecutor, or the prosecutor's representative, may discuss the jury deliberations or verdict with a member of the jury only if the juror consents to the discussion." He asserts that this statute impliedly shows "that the State, as well as the defense, may not speak to impaneled jurors until they are discharged from their jury duties."

But Manczuk fails to recognize that this was not an ex parte communication. It happened in open court with all parties present. It was merely an attempt by a juror to hear everybody. While K.S.A. 22-3440(b) indeed outlines some rules for communicating with jurors after they have been discharged, nothing in the statute prohibits a prosecutor from repeating a statement made in open court during closing argument in response to a question by the jury. And, as the State points out, if merely communicating with the jury during trial in open court is a violation of K.S.A. 22-3440(b), opening and closing statements would likewise be prohibited.

Again, counsel encouraged the jurors, at least during voir dire, to speak up if they could not hear. They were never told that this request applied only to voir dire. Manczuk does not present any applicable caselaw to support a finding that this would be prosecutorial error.

6.3    *Harmless error*

Finally, any prejudice that could have resulted from this brief exchange was to the State, not Manczuk. It was the prosecutor who was being deprived of a juror considering what he said, because he was not allowed to clarify. So even if this exchange was prejudicial, it was clearly harmless as to the defendant.

Since Manczuk fails to show how this brief exchange during closing argument violated his right to a fair trial, his claim falls flat.

SECTION 7: CUMULATIVE ERROR

Finally, Manczuk contends the cumulative effect of the above errors deprived him of a fair trial.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. But the cumulative error rule does not apply if there are no errors or only a single error. *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023). Here, the only error potentially available to Manczuk is the district court's erroneous inclusion of the definition for "visual depiction" in the instruction for the sexual exploitation of a child charge. But this instructional error was not preserved at trial. Recently, the Kansas Supreme Court has advised that unpreserved instructional error cannot be used as the basis for cumulative error unless the error is shown to be clearly erroneous. *State v. Waldschmidt*, 318 Kan. 633, Syl. ¶ 9, 546 P.3d 716 (2024). We found the error was not clearly erroneous.

In short, none of the claims raised by Manczuk constitute trial error, so there are no errors to accumulate under a cumulative error analysis.

Affirmed.